UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CANDACE FALLER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| TWO BRIDGES REGIONAL JAIL, | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Candace Faller, by and through the undersigned counsel, complains of Two Bridges Regional Jail as follows:

**INTRODUCTION**

1. This action is brought by Plaintiff Candace Faller seeking redress for the physical and emotional injuries she suffered because Defendant Two Bridges Regional Jail intentionally discriminated against her because she is disabled and refused to provide reasonable accommodations for her disability.

**JURISDICTION AND VENUE**

2. This action is brought pursuant to Title II of the Americas with Disabilities Act, As Amended, 42 U.S.C. § 12132. It is also brought pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

3. Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper under 28 U.S.C. § 1391 because all events giving rise to the claims occurred in Maine and Defendant Two Bridges Regional Jail is located in Maine.

## JURY TRIAL DEMAND

5. Ms. Faller hereby demands trial by jury on all issues triable to a jury.

## PARTIES

6. Plaintiff Candace Faller is a citizen of the United States and resides in the Town of Woolwich, County of Sagadahoc, State of Maine. At the time relevant to this Complaint, Ms. Faller lived in Rockland, Maine.

7. At all relevant times Plaintiff Candace Faller was a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2) of the ADA and 29 U.S.C. § 794 of the Rehabilitation Act.

8. Defendant Two Bridges Regional Jail is a corrections facility located in Wiscasset, Maine and operated pursuant to the Lincoln and Sagadahoc Multicounty Jail Authority. Upon information and belief, it receives federal financial assistance for the various programs and activities it provides.

9. At all relevant times Defendant Two Bridges Regional Jail was a "public entity" as defined by 42 U.S.C. § 12131(1) of the ADA and 29 U.S.C. § 794 of the Rehabilitation Act.

## FACTUAL BACKGROUND

**A. Ms. Faller Suffers from a Disability as Defined by the Americans with Disabilities Act, As Amended.**

10. Plaintiff Candace Faller ("Ms. Faller") has a history of mental health disorders.

11. At all times relevant to this civil action, including the date she was arrested and booked in Two Bridges Regional Jail, Ms. Faller had been diagnosed with, and was suffering from symptoms of, post-traumatic stress disorder ("PTSD"), anxiety, and depression.

12. Ms. Faller's anxiety, depression, and PTSD resulted, in part, from being the victim of childhood sexual abuse and suffering sexual assault as an adult during a period of homelessness.

13. These disabling mental health conditions cause Ms. Faller significant and debilitating anxiety and fear, particularly when interacting with aggressive or physically intimidating men who are in close proximity to her.

14. Ms. Faller's disabling mental health conditions also result in poor and sporadic sleep punctuated with nightmares and bad dreams. At times they make her energy level so low that she struggles to accomplish activities of daily living and fails to eat meals regularly and consistently.

15. The ADA establishes that "major life activity" and "substantial limitation" are to be construed as broadly as possible, pursuant to 42 U.S.C. § 12102(4)(A).

16. Pursuant to the ADA Amendments Act of 2008, what constitutes a major life activity includes the operation of a major bodily function, "including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. 12102(2)(B). Major life activities also include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. 12102(2)(A).

17. The legislative history to the ADA Amendments Act of 2008 states that substantially limits means, "restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." Managers Statement, 154 Cong. Rec. at S 8842. Making this determination relates, for example, to the way that individuals perform major

life activities. Statement Rep. Stark, 154 Cong. Rec. at H8291; Statement of Rep. Courtney, 154 Cong. Rec. at H8296.

18. Ms. Faller's anxiety, depression, and PTSD are disabilities under the ADA and the Rehabilitation Act because they are mental impairments that substantially limit various major life activities in those that have them, including Ms. Faller. For Ms. Faller they substantially limited her brain functioning, as well as her ability to sleep, to eat, and to communicate and interact effectively with others.

19. The substantive standards for determining liability under the ADA and the Rehabilitation Act are the same.

**B. Ms. Faller is Arrested.**

20. On April 28, 2016, Ms. Faller was arrested by an officer of the Wiscasset Police Department named Nadean Crossly.

21. That morning Officer Crossly witnessed Ms. Faller driving erratically. He turned on his lights and sirens, and in response she pulled into a convenience store parking lot.

22. When Officer Crossly approached her car, Ms. Faller explained to him that she suffered from PTSD due to being raped, and that as a result she becomes fearful and anxious when she is close to or touched by loud, domineering, or aggressive men.

23. During the arrest Officer Crossly took into consideration Ms. Faller's PTSD. He made efforts to give her verbal commands, did not act aggressively or yell loudly, and when he handcuffed her, he did it gently. Ms. Faller was arrested that morning for OUI without incident.

24. After arresting her, Officer Crossly brought Ms. Faller to Two Bridges Regional Jail.

### C. Ms. Faller is Booked at Two Bridges Regional Jail.

25. Upon arriving at Two Bridges Regional Jail, Ms. Faller met with a corrections officer (the "Booking Officer") to complete the booking process. The Booking Officer was male.

26. Paperwork completed during the booking process reflects that Ms. Faller told the Booking Officer that she suffered from anxiety, depression, and PTSD, and that she had a history of suicide attempts.

27. Throughout the booking process, the Booking Officer was loud and aggressive and repeatedly touched Ms. Faller. As a result, Ms. Faller became anxious, fearful, and scared.

28. Jail records from that day show that Ms. Faller was 5' 1", and weighed 110 pounds when she was booked. The Booking Officer was significantly taller and heavier than her. At no point was she a direct threat to the safety of others present or otherwise create danger or risk to others' safety.

29. As she had done with Officer Crossly when she was arrested, Ms. Faller told the Booking Officer that she had PTSD, which made it very difficult for her to be around men who touched her or who she perceived to be domineering or physically or verbally aggressive.

30. In response to what she told him about her disability, the Booking Officer grabbed Ms. Faller's arm tightly enough to bruise, and pulled her off her chair and towards what she assumed would be a cell. The Booking Officer did this to Ms. Faller because he had just learned that her PTSD would make it acutely painful and difficult for her.

31. In response, Ms. Faller yelled "Don't touch me!"

### D. Ms. Faller is Taken to a Cell.

32. Terrified by what was happening, Ms. Faller reiterated to the Booking Officer that her PTSD makes being treated this way by men extraordinarily difficult and painful for her because of her history of sexual assault victimization and rape.

33. As the Booking Officer continued to pull her by the arm, she repeatedly requested that, because of her PTSD, a female corrections be provided to perform whatever was now happening to her.

34. Upon information and belief, numerous corrections officers and other jail staff heard Ms. Faller's request for a female officer because of her PTSD.

35. Despite knowing that Ms. Faller had PTSD that was triggered by loud and aggressive men, the Booking Officer denied Ms. Faller's request for assistance from a female officer. Instead, he forcefully pulled her toward a security door. Once there, he pushed her head up against the wall. While they waited for the door to open, the Booking Officer pressed his entire body up against Ms. Faller, pinning her head and her body up against the wall.

36. At this point Ms. Faller was experiencing acute fear and anxiety due to her PTSD.

37. When the door opened, the Booking Officer led Ms. Faller through and towards a cell. By now, at least two other male corrections officers had joined Ms. Faller and the Booking Officer.

38. When they arrived at the cell, the Booking Officer led Ms. Faller inside and started pushing her up against the wall from behind.

39. Once inside the cell, Booking Officer grabbed Ms. Faller's arms and held her down while five additional male corrections officers arrived. The Booking Officer released Ms. Faller's hands.

40. At this point Ms. Faller was experiencing intense anxiety and panic that would have been avoided had her accommodation request for a female officer not been denied.

41. Now sitting on the cell bed, Ms. Faller put her hands up to signal she was not aggressive, and again explained that she had PTSD from being raped and that being handled this way by men makes her fearful and anxious. She also again requested the assistance of a female

officer. As she was speaking, she watched as five other male corrections officers enter the cell and close in around her.

42. The Booking Officer began yelling and pointing at Ms. Faller. He then grabbed her by the arms, spun her around and picked her up, before violently slamming her against the wall. At this point two additional corrections officers joined him, and together they held Ms. Faller down while they began to strip items off her body.

43. During this process, Ms. Faller was thrown against the wall so forcefully that it fractured her tailbone, causing her tremendous pain.

44. Ms. Faller was terrified and did not know what was happening or what to do. She was surrounded by men who were on top of her and seemed to be trying to remove her clothes.

45. Less than a minute later, a female corrections officer witnessed what was happening and immediately entered the cell to intervene.

46. The female officer told the male officers that she would take over with Ms. Faller.

47. The male officers backed away from Ms. Faller and the female corrections officer completed the process without additional issues.

48. The female officer removed Ms. Faller's shoes and her jewelry.

49. Ms. Faller was then escorted to a cell where she was housed alone for the duration of her stay.

50. While in the cell Ms. Faller repeatedly requested medical attention because of the intense pain she felt in her lower back and bottom. The pain was so severe that lying down and sitting were extremely difficult.

51. Eventually a nurse came to the cell door. Through the door, Ms. Faller explained what happened and the pain that she was feeling. She requested emergency medical attention and medication for the pain.

52. The nurse did not open the cell door and did not examine Ms. Faller in response to her complaints. Instead, she told Ms. Faller that she would not receive any medical attention. Then the nurse left.

53. This was the only interaction Ms. Faller had with any member of the Jail's medical staff. Ms. Faller received no medical examination while in the Jail. She received no pain medication despite her requests.

54. On April 29, 2016, Ms. Faller was released from Two Bridges Regional Jail. She was exhausted and emotionally and physically injured as a result of her treatment.

55. On April 30, 2016, Ms. Faller sought medical attention for the physical injuries she suffered in Two Bridges Regional Jail. Medical records reflect that Ms. Faller had bruising scattered on both her arms and both her thighs. X-rays revealed that corrections officers had fractured her coccyx (tailbone).

56. In addition, she obtained counseling and mental health treatment for the emotional pain and suffering that was inflicted on her at the jail, which continues to this day.

## CAUSES OF ACTION

### FIRST CLAIM:
### VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

57. Ms. Faller re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 56, above.

58. Ms. Faller's anxiety, depression, and PTSD qualify as disabilities within the meaning of the ADA.

59. Ms. Faller is otherwise qualified to participate in or receive the benefit of the Two Bridges Regional Jail's services, programs, or activities, including those services, programs, and activities related to the booking, housing, and processing of individuals into the Jail.

60. Defendant Two Bridges Regional Jail is a public entity pursuant to 42 U.S.C. § 12131(1) of the ADA.

61. The Department of Justice specified that the statutory term "program" includes "the operations of the agency or organizational unit of government receiving or substantially benefitting from the Federal assistance awarded, e.g., a police department or department of corrections." 28 C.F.R. § 42.540. The regulations also indicate that "benefit" includes "provision of services, financial aid, or disposition (i.e., handling, decision, sentencing, confinement, or other prescription of conduct)." The commentary also made clear that "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." 28 C.F.R. § 35, App. A, Subpart B.

62. Ms. Faller was denied the benefits of the Two Bridges Regional Jail's services, programs, or activities by reason of her disability.

63. Specifically, Two Bridges Regional Jail intentionally discriminated against Ms. Faller in violation of Title II of the ADA when the Booking Officer and other corrections officers intentionally subjected her to an unnecessarily forceful booking and intake process, which caused her emotional and physical injury. The Booking Officer knew Ms. Faller had PTSD that would cause her to become fearful, anxious, and scared in response to his actions, and he chose to treat her the way he did despite this knowledge. This violation by Two Bridges was done intentionally and with deliberate indifference.

64. In addition, Two Bridges Regional Jail failed to provide the reasonable accommodation or modification of the use of a female corrections officer to perform certain aspects of the Jail's booking and intake process, despite the fact that it knew Ms. Faller had

requested that accommodation because her PTSD, which made physical and aggressive interactions with men traumatizing and acutely painful for her.

65. Such an accommodation was reasonable because a female corrections officer was present in the jail and could provide the accommodation Ms. Faller requested. Indeed, a female officer intervened and completed Ms. Faller's booking and intake process after she was physically and emotionally injured by the male officers. This violation by Two Bridges was done intentionally and with deliberate indifference and caused her great physical and emotional injury, pain, and suffering.

66. The accommodation and modification requested by Ms. Faller would not have been an undue burden to Two Bridges Regional Jail and would not have fundamentally altered the nature of its services, programs, or activities.

67. The acts and omissions alleged above constitute discrimination and failure to accommodate in violation of Title II of the Americans with Disabilities Act and implementing regulations, and caused Ms. Faller physical and emotional injuries. 42 U.S.C. § 12132, 28 C.F.R. § 35.130(b)(7).

## SECOND CLAIM:
## VIOLATIONS OF THE REHABILITATION ACT

68. Ms. Faller re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 67, above.

69. Ms. Faller's anxiety, depression, and PTSD makes her a qualified individual with a disability within the meaning of the Rehabilitation Act.

70. Ms. Faller is otherwise qualified to participate in or receive the benefit of the Two Bridges Regional Jail's services, programs, or activities.

71. Defendant Two Bridges Regional Jail is a public entity pursuant to 29 U.S.C. § 794 of the Rehabilitation Act.

72. The Department of Justice specified that the statutory term "program" includes "the operations of the agency or organizational unit of government receiving or substantially benefitting from the Federal assistance awarded, e.g., a police department or department of corrections." 28 C.F.R. § 42.540. The regulations also indicate that "benefit" includes "provision of services, financial aid, or disposition (i.e., handling, decision, sentencing, confinement, or other prescription of conduct)." The commentary also made clear that "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." 28 C.F.R. § 35, App. A, Subpart B.

73. Ms. Faller was denied the benefits of the Two Bridges Regional Jail's services, programs, or activities by reason of her disability.

74. Specifically, Two Bridges Regional Jail intentionally discriminated against Ms. Faller in violation of the Rehabilitation Act when the Booking Officer and other corrections officers subjected her to an unnecessarily forceful and injurious booking and intake process. The Booking Officer knew Ms. Faller had PTSD that would cause her to become fearful, anxious, and scared in response to his actions, and he chose to treat her the way he did despite this knowledge. This violation by Two Bridges was done intentionally and with deliberate indifference and caused her great physical and emotional injury, pain, and suffering.

75. In addition, Two Bridges Regional Jail failed to provide the reasonable accommodation or modification of the use of a female corrections officer to perform certain aspects of the Jail's booking and intake process, despite the fact that it knew Ms. Faller had

requested that accommodation because her PTSD, which made interacting with physical and aggressive men traumatizing and acutely painful for her.

76. Such an accommodation was reasonable because a female corrections officer was present in the jail and could provide the accommodation Ms. Faller requested. Indeed, a female officer intervened and completed Ms. Faller's booking and intake process after she was physically and emotionally injured by the male officers. This violation by Two Bridges was done intentionally and with deliberate indifference.

77. The accommodation and modification requested by Ms. Faller would not have resulted in an undue burden to Two Bridges Regional Jail and would not have fundamentally altered the nature of its services, programs, or activities.

78. The acts and omissions alleged above constitute discrimination and failure to accommodate in violation of the Rehabilitation Act, and caused Ms. Faller physical and emotional injuries.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Faller prays that this Court will:

a. Award compensatory damages.

b. Award costs of the action including reasonable attorneys' fees, costs, and expenses.

c. Order Defendant Two Bridges Regional Jail to develop and provide staff adequate training to ensure that individuals with disabilities are not discriminated against and are provided reasonable accommodations for their disabilities.

d. Such other relief that this Court may deem appropriate.

                                    Respectfully submitted,

Dated: February 25, 2021          */s/ Samuel S. Riotte*
                                          Samuel S. Riotte
                                          McTEAGUE HIGBEE
                                          Four Union Park
                                          P.O. Box 5000
                                          Topsham, ME 04086
                                          (207) 725-5581
                                          sriotte@mcteaguehigbee.com

                                          *Counsel to Plaintiff*